UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
EDITH M. BUDIK,                     )
                                    )
            Plaintiff,              )
                                    )
       v.                           )   Civil Action No. 12-1949 (RBW)
                                    )
RICANTHONY R. ASHLEY, M.D.,         )
                                    )
            Defendant.              )
_____ )

**MEMORANDUM OPINION**

The pro se plaintiff in this case, Edith M. Budik, filed a complaint against the defendant, Lieutenant Colonel Ricanthony R. Ashley ("Lt. Col. Ashley"), asserting claims of defamation and fraud, violations of the Privacy Act, 5 U.S.C. § 552a (2012), and violations of the Confidentiality of Medical Quality Assurance Records statute, 10 U.S.C. § 1102 (2012). See Amended Complaint ("Compl.") ¶¶ 3, 25-26, 30-31, 33-34, 36, Conclusion. Currently before the Court is the defendant's Motion to Substitute the United States and Dismiss ("Def.'s Mot."). Upon careful consideration of the parties' submissions,[1] the Court concludes that the defendant's motion must be granted.

**I. BACKGROUND**

The plaintiff was employed as a staff radiologist at Landstuhl Regional Medical Center ("Landstuhl") in Landstuhl, Germany, from November 5, 2007, through February 25, 2008.

---

[1] In addition to those filings already identified, the Court considered the following submissions by the parties in reaching its decision: the Memorandum of Points and Authorities in Support of Defendant's Motion to Substitute the United States and Dismiss ("Def.'s Mem."); the Plaintiff's Response to Defendant's Motion to Substitute United States and Dismiss ("Pl.'s Opp'n"); and the Reply in Support of Defendant's Motion to Substitute the United States and Dismiss ("Def.'s Reply").

1

Compl. ¶ 1. Lt. Col. Ashley was her supervisor. Id. ¶ 2. "As [her] supervisor, [the] [d]efendant completed a rating . . . of [the] [p]laintiff's clinical performance on a DA Form 5374."[2] Id. ¶ 3; see also id., Exhibit ("Ex.") 20 (January 2, 2009 Declaration of Lt. Col. Ashley ("Ashley Decl.")) at 2. Lt. Col. Ashley "initially filled out the evaluation without comments," however, the credentialing department told him that "if there were issues with Dr. Budik, they should be included on the assessment." Id., Ex. 20 (Ashley Decl.) at 2 ("[The credentialing department] stressed that I should be sure to document any issues for future consideration on the form."). The credentialing department "sent the form back to [Lt. Col. Ashley] and [he] commented that [the plaintiff] had some issues with some of the clinical staff." Id., Ex. 20 (Ashley Decl.) at 2. Specifically, Lt. Col. Ashley added the following comments to the plaintiff's DA Form 5374: "Col[.] Budik had some problems with staff interaction which resulted in several complaints and clinicians going to other radiologists instead of her." Id., Ex. 20 (Ashley Decl.) at 1 (internal quotation marks omitted); see also Compl. ¶¶ 18-19.

On May 20, 2008, after the conclusion of the plaintiff's employment at Landstuhl, she applied for a position as a neuroradiologist at the Dartmouth-Hitchcock Medical Center ("Dartmouth"). Id. ¶ 8. On June 25, 2008, Colonel Steven Princiotta ("Col. Princiotta"), the Deputy Commander of Clinical Services of Landstuhl, telephoned the plaintiff. Id. ¶ 9. During the telephone call, the "[p]laintiff inquired of the status of the Dartmouth evaluation, and [Col.] Princiotta stated that he had not yet completed the evaluation [for] Dartmouth but would do so." Id. "Five days after the call from [Col.] Princiotta, on June 30, 2008, the credentialing process at Dartmouth suddenly stopped." Id. ¶ 11. On or around October 30, 2008, the "[p]laintiff learned

---

[2] The DA Form 5374 is "a military performance assessment form for medical personnel." Budik v. United States (Budik II), 949 F. Supp. 2d 14, 18 (D.D.C. 2013), aff'd, Nos. 13-5122, 13-5123, 2013 WL 6222903 (D.C. Cir. Nov. 19, 2013).

2

that [Col.] Princiotta . . . had signed the Dartmouth rating form," id. ¶ 24 (citing Compl., Ex. 17 (Unredacted Dartmouth Professional Practice Evaluation), and that it contained the same statement Lt. Col. Ashley had written on the plaintiff's DA Form 5374, see Compl., Ex. 9 (Partially Redacted Dartmouth Professional Practice Evaluation) at 2-3; Compl. ¶ 24.

"On or about August 14, 2008, [the] [p]laintiff applied [for a position] as a civilian [d]iagnostic [r]adiologist through Sterling Medical, a civilian-hiring agent for Malcolm Grow Medical Center . . . at Andrews Air Force Base, Maryland." Id. ¶ 12. Sterling Medical also "received an evaluation report directly from [Landstuhl]" that included "the same 'troublesome' statement that had been written on the Dartmouth [rating] form." Id. ¶¶ 16-17.

The plaintiff originally filed suit against Lt. Col. Ashley in the New York State Supreme Court of Orange County, New York. See Notice of Removal, ECF No. 1. The case was removed to the United States District Court for the Southern District of New York, id., and then transferred to this Court on December 3, 2012, see December 3, 2012 Minute Entry. The complaint asserts claims of fraud, misrepresentation, forgery, and defamation, and additionally alleges that the defendant violated the Privacy Act and a statute governing the confidentiality of medical quality assurance records. Compl. ¶¶ 3, 23, 26, 32, 34, 36, 38, Conclusion. The plaintiff seeks "all available remedies at law and/or equity," including $4,000,000 in lost wages and $4,000,000 "for damages to her reputation in the medical community, her career, and loss of future earnings." Id. at Conclusion. The defendant now moves to dismiss the plaintiff's claims for lack of subject matter jurisdiction and for failure to state a claim for which relief can be granted. The plaintiff opposes the motion.

## II. STANDARDS OF REVIEW

### A. Treatment of Pro Se Pleadings

The pleadings of pro se parties are to be "liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (internal citations and quotations omitted). However, even though a pro se complaint must be construed liberally, the complaint must still "present a claim on which the [C]ourt can grant relief." Chandler v. Roche, 215 F. Supp. 2d 166, 168 (D.D.C. 2002) (citing Crisafi v. Holland, 655 F.2d 1305, 1308 (D.C. Cir. 1981)).

### B. Rule 12(b)(1) Motion to Dismiss

When a defendant moves for dismissal under Federal Rule of Civil Procedure 12(b)(1), "the plaintiff[] bear[s] the burden of proving by a preponderance of the evidence that the Court has subject matter jurisdiction." Biton v. Palestinian Interim Self-Gov't Auth., 310 F. Supp. 2d 172, 176 (D.D.C. 2004); see Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). A court considering a Rule 12(b)(1) motion must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting [a] plaintiff the benefit of all inferences that can be derived from the facts alleged.'" Am. Nat'l Ins. Co. v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting Thomas v. Principi, 394 F.3d 970, 972 (D.C. Cir. 2005)). However, "the district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." Jerome Stevens Pharm., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005) (citing Herbert v. Nat'l Acad. of Scis., 974 F.2d 192, 197 (D.C. Cir. 1992)).

**C.      Rule 12(b)(6) Motion to Dismiss**

A Federal Rule of Civil Procedure 12(b)(6) motion tests whether the complaint "state[s] a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556).  While the Court must "assume [the] veracity" of any "well-pleaded factual allegations" in the complaint, conclusory allegations "are not entitled to the assumption of truth."  Id. at 679.

### III.  LEGAL ANALYSIS

Before reaching the merits of the defendant's motion to dismiss, the Court will first address the defendant's motion to substitute the United States as the defendant.

**A.      Substitution of the United States as the Proper Defendant for the Plaintiff's Tort Claims**

The defendant argues that the United States is the proper defendant for the plaintiff's tort claims and "moves this Court to substitute the United States as [the] [d]efendant for [the] [p]laintiff's claims against Colonel Ashley."  Def.'s Mot. at 1; see also Def.'s Mem. at 1.  The plaintiff opposes the motion.  See generally Pl.'s Opp'n.

The Westfall Act, 28 U.S.C. § 2679(d)(1) (2012), which is part of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680, governs certain tort claims procedures where such claims are made against the United States or agencies or officers thereof.  Under the Westfall Act,

> [u]pon certification by the Attorney General that the defendant employee was acting within the scope of his office of employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim . . . shall be deemed an action brought against the United States . . . and the United States shall be substituted as the party defendant.

28 U.S.C. § 2679(d)(1). By regulation, the Attorney General has delegated the certifying authority to "[t]he United States Attorney for the district where the civil action or proceeding is brought" and the United States Attorney may further delegate the authority to an Assistant United States Attorney. 28 C.F.R. § 15.4(a) (2013); see Stokes v. Cross, 327 F.3d 1210, 1212 (D.C. Cir. 2003). The certification "does not conclusively establish as correct the substitution of the United States as defendant in place of the employee. But it does constitute prima facie evidence that the employee was acting within the scope of employment." Council on Am. Islamic Relations v. Ballenger, 444 F.3d 659, 662 (D.C. Cir. 2006) (internal citations and quotation marks omitted). A plaintiff who challenges the certification "bears the burden of coming forward with specific facts rebutting the certification." Id. (quoting Stokes, 327 F.3d at 1214); see also Wurterich v. Murtha, 562 F.3d 375, 381 (D.C. Cir. 2009). "Once a court determines that the federal employee acted within the scope of employment, the case is, inter alia, restyled as an action against the United States that is governed by the Federal Tort Claims Act." Council on Am. Islamic Relations, 444 F.3d at 662.

The defendant submitted with its notice of removal from the New York Supreme Court to the Southern District of New York a certification signed by Preet Bharara, the United States Attorney for the Southern District of New York, certifying that Lt. Col. Ashley "was acting within the scope of his employment" when the events that form the basis of the plaintiff's claims arose. See Notice of Removal, Ex. B (December 31, 2009 Certification). Although the plaintiff opposes the motion, she has failed to allege specific facts to rebut the certification and the

6

presumption that the defendant was acting within the scope of his employment. See generally Pl.'s Opp'n. Rather, she states in a conclusory fashion that the defendant's motion to substitute the United States should be denied because the defendant lacked authority to "spoliate a rating," "sequester a rating," "rate [the] plaintiff for a second time," and did not have the "authority to write an adverse evaluation without substantiation of any adverse remarks." Id. at 7.

Because the plaintiff presents no specific facts to rebut the certification, the Court must substitute the United States as the defendant for the plaintiff's tort claims.[3] The Court will therefore consider the plaintiff's tort claims as claims brought under the FTCA. See Council on Am. Islamic Relations, 444 F.3d at 662.

## B. The Plaintiff's FTCA Claims

The defendant argues that the plaintiff's tort claims should be dismissed for "lack[] of subject matter jurisdiction because . . . her claims of fraud and defamation are not cognizable under the FTCA." Def.'s Mem. at 10. "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." United States v. Mitchell, 463 U.S. 206, 212 (1983). Although the FTCA is a waiver of the United

---

[3] Even if the plaintiff had presented specific facts, she would have been unable to prevent the substitution of the United States as the proper defendant for her tort claims. "Scope of employment questions are governed by the law of the place where the employment relationship exists." Majano v. United States, 469 F.3d 138, 141 (D.C. Cir. 2006). Here, the employment relationship arguably existed in Germany, where Lt. Col. Ashley supervised the plaintiff. If the employment existed there, however, then the FTCA would bar the plaintiff's tort claims. See 28 U.S.C. § 2680(k) (providing that the FTCA does not apply to "[a]ny claim arising in a foreign country"). If, on the other hand, the relationship existed in New Hampshire, where the alleged defamatory statements were received by Dartmouth, then the law of New Hampshire would apply. And under that law, Lt. Col. Ashley would have been acting within the scope of his employment if adding the comments to the plaintiff's DA Form 5374 was "authorized by the employer or incidental to authorized duties; if it was done within the time and space limits of employment; and if it was actuated at least in part by a purpose to serve an objective of the employer." Aversa v. United States, 99 F.3d 1200, 1210 (1st Cir. 1996) (construing New Hampshire law). The plaintiff's complaint and the documents submitted with it establish that Lt. Col. Ashley was her supervisor while she was at Landstuhl and was generally authorized to review her work, Compl. ¶ 3; see also Def.'s Reply at 5 (citing Army Reg. 40-68 ¶ 5-1(b) (2009) ("Immediate supervisors . . . are responsible for assessing . . . staff competency.")), that he added the comments to the DA Form 5374 shortly after she left Landstuhl, and that the comments were added at the request of the Landstuhl credentialing department, see Compl., Ex. 20 (Ashley Decl.) at 2. Thus, Lt. Col. Ashley was acting within the scope of his employment under New Hampshire law.

7

States' sovereign immunity, there are instances in which the United States retains its immunity. See Marcus v. Geithner, 813 F. Supp. 2d 11, 16 (D.D.C. 2011) (citing Int'l Eng'g Co. v. Richardson, 512 F.2d 573, 577 (D.C. Cir. 1975)). And, "any claim arising out of . . . libel, slander, misrepresentation, [or] deceit" is not actionable under the FTCA. 28 U.S.C. § 2680(h); see also United States v. Neustadt, 366 U.S. 696, 702 (1961); Scanwell Labs., Inc. v. Thomas, 521 F.2d 941, 947-48 (D.C. Cir. 1975). Further, the FTCA does not waive the United States' immunity for claims of defamation. Kugel v. United States, 947 F.2d 1504, 1506 (D.C. Cir. 1991).

Here, the plaintiff asserts claims of "misrepresentation, fraud, and defamation." Compl. at Conclusion; see also Pl.'s Opp'n at 4 (alleging that certain documents contained "false representation[s] of [the] plaintiff"). Because all of the plaintiff's tort claims stem from the allegedly false statements made by Lt. Col. Ashley, she is essentially asserting claims of "libel slander, misrepresentation, [or] deceit," § 2680(h), over which this Court lacks subject matter jurisdiction. Accordingly, the Court must dismiss the plaintiff's claims of "misrepresentation, fraud, and defamation." Compl. ¶¶ 17-19, 20, 23-26, 33-35.

Even if the FTCA did not bar the plaintiff's tort claims, the Court would nonetheless lack jurisdiction over those claims. "The FTCA 'require[s] the plaintiff[] to file an administrative claim with either the Department of Defense . . . or the appropriate military department before bringing suit[]' . . . . [and] '[t]he failure to exhaust administrative remedies [is] jurisdictional.'" Ali v. Rumsfeld, 649 F.3d 762, 775 (D.C. Cir. 2011) (citations omitted). The "[United States Army Claims Service], a command and component of the Office of [The Judge Advocate General], is the agency through which the [Secretary of the Army] and [The Judge Advocate General] discharge their responsibilities for the administrative settlement of claims worldwide . .

8

. . ." 32 C.F.R. § 536.3(c). The Department of the Army's regulations provide that "[c]laims cognizable under [the FTCA] . . . are processed and settled under" Part 536 of Title 32 of the Code of Federal Regulations. See 32 C.F.R. § 536.2(a)(iv) (2007). Part 536, among other requirements, directs claimants to submit "[a] claim [in] a writing that contains a sum certain for each claimant and that is signed by each claimant." 32 C.F.R. § 536.26(a).

Here, the plaintiff did not file an appropriate complaint with the United States Army Claims Service. Although the plaintiff filed a complaint with the Department of the Army Board for Correction of Military Records seeking the "removal of a[n] . . . altered DA Form 5374 . . . from her personnel file," Compl., Ex. 23 (August 4, 2009 Letter, Department of the Army Board for Correction of Military Records, Denial of Application) ¶ 1, there is no indication in her complaint or the exhibits submitted with it that she ever filed an administrative claim with the United States Army Claims Service. Indeed, this Court previously credited a declaration submitted by the United States and relating to these same claims asserted in this case, which stated that "no administrative claim was filed by [the plaintiff] under [the FTCA]." Budik v. Dartmouth-Hitchcock Med. Ctr. (Budik I), 937 F. Supp. 2d 5, 16 (D.D.C. 2013), aff'd, No. 13-5121, 2013 WL 6222951 (D.C. Cir. Nov. 19, 2013). Because the plaintiff has not demonstrated that she filed an administrative claim seeking relief for her tort claims, she has not established that she exhausted her administrative remedies as required by statute, thereby depriving this Court of jurisdiction over those claims. 28 U.S.C. § 2675.

In sum, because the plaintiff's claims of misrepresentation, fraud, and defamation are barred by the FTCA due to the United States' sovereign immunity, and moreover because she failed to exhaust her administrative remedies with respect to those claims, the Court lacks subject matter jurisdiction to entertain them. The Court must therefore dismiss the plaintiff's tort claims.

**C.  The Plaintiff's Privacy Act Claims**

The defendant argues, Def.'s Mem. at 14-15, that the plaintiff's claim under the Privacy Act is barred by issue preclusion in light of this Court's March 7, 2013 Memorandum Opinion and Order dismissing a related action filed by the same plaintiff.  See Budik v. United States (Budik II), 949 F. Supp. 2d 14, 28-30 (D.D.C. 2013), aff'd, Nos. 13-5122, 13-5123, 2013 WL 6222903 (D.C. Cir. Nov. 19, 2013).  "Res judicata is an affirmative defense . . . [that] is [] properly brought in a pre-answer Rule 12(b)(6) motion."  Hemphill v. Kimberly-Clark Corp., 530 F. Supp. 2d 108, 111 (D.D.C. 2008).  Res judicata encompasses two doctrines governing "[t]he preclusive effect of a judgment": "claim preclusion and issue preclusion."  Taylor v. Sturgell, 553 U.S. 880, 892 (2008).  The doctrine of "[i]ssue preclusion . . . bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim."  Id. (quoting New Hampshire v. Maine, 532 U.S. 742, 748-49 (2001)).  "By 'preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate,' [this] . . . doctrine[] protect[s] against 'the expense and vexation attending multiple lawsuits, conserv[es] judicial resources, and foste[rs] reliance on judicial action by minimizing the possibility of inconsistent decisions.'"  Id. (quoting Montana v. United States, 440 U.S. 147, 153-54 (1979)) (some alterations in original).  In determining whether issue preclusion exists, a court may take judicial notice of "all relevant facts [that] are shown by the court's own records," as well as "public records from other proceedings."  Hemphill, 530 F. Supp. 2d at 111 (citing Covad Commc'ns v. Bell Atl. Corp., 407 F.3d 1220, 1222 (D.C. Cir. 2005)) (internal quotation marks omitted).

Under the doctrine of issue preclusion, a plaintiff will be barred from asserting a cause of action if

> the same issue . . . being raised [was] contested by the parties and submitted for judicial determination in the prior case, the issue [was] actually and necessarily determined by a court of competent jurisdiction in that prior case, [and] preclusion . . . must not work a basic unfairness to the party bound by the first determination.

Martin v. DOJ, 488 F.3d 446, 454 (D.C. Cir. 2007) (quoting Yamaha Corp. of Am. v. United States, 961 F.2d 245, 254 (D.C. Cir. 1992)). A basic unfairness exists if "the party to be bound lacked an incentive to litigate [the issue] in the first [cause of action], especially in comparison to the stakes of the second [cause of action]." Otherson v. DOJ, Immigration & Naturalization Serv., 711 F.2d 267, 273 (D.C. Cir. 1983) (citing Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found., 402 U.S. 313, 333 (1971)). When applying issue preclusion, "it is the prior judgment that matters, not the court's opinion explicating the judgment." Bailey v. DiMario, 925 F. Supp. 801, 810 (D.D.C. 1995) (quoting Yamaha, 961 F.2d at 254) (internal quotation marks omitted).

Here, the plaintiff alleges that the "DA [Form] 5374 does not fall under the common use rule" of § 552a of the Privacy Act, "as this form is protected from disclosure and not releasable by [the] [p]laintiff's consent." Compl. ¶ 36. These are the same issues of law that were raised, litigated, and decided in one of the plaintiff's prior cases. See Budik II, 949 F. Supp. 2d at 18-21; 28-30 (holding that the defendant did not violate the Privacy Act because the disclosure "was compatible with the purpose for which the information was collected" and that the defendant satisfied pre-disclosure requirements of the Act). Moreover, applying the doctrine of issue preclusion will not "work a basic unfairness" against the plaintiff because she had an incentive to litigate this issue in the first cause of action, in which she also argued that the release of her DA Form 5374 was detrimental to her ability to obtain employment. Id. at 19-21. Again, here, the

plaintiff makes legal allegations identical to those made in the earlier cause of action, namely that the disclosure of the DA Form 5374 or information contained therein to a medical institution violates the Privacy Act. Compl. ¶ 25. Because the plaintiff made the same allegations and identified the same types of employment opportunities that were lost because of the negative evaluations, she had an incentive to litigate this issue in Budik II. Accordingly, the Court finds that the plaintiff's Privacy Act claim is barred by issue preclusion and therefore dismisses that claim.[4]

**D.     The Plaintiff's Confidentiality of Medical Quality Assurance Records Claim**

The defendant argues that it did not violate the Confidentiality of Medical Quality Assurance Records statute, 10 U.S.C. § 1102. Def.'s Mem. at 18-19; Compl. ¶ 3. Specifically, the defendant argues that the release of the plaintiff's DA Form 5374 was permissible under § 1102(c)(1)(D), and that, in any event, the statute does not provide a private right of action because the United States has not waived its sovereign immunity under the statute. Def.'s Mem. at 19-20. Although the plaintiff's claims are similar to the claims that she filed in a prior case, Budik II, 949 F. Supp. 2d at 19-20, 26-28, the defendant does not argue that the plaintiff's § 1102 claim is barred by the doctrine of res judicata. However, the Court can consider the applicability of the doctrine sua sponte, see Stanton v. District of Columbia Court of Appeals, 127 F.3d 72, 77 (D.C. Cir. 1997) ("As res judicata belongs to courts as well as to litigants, even a

---

[4] The plaintiff also asserts that the Army Review Board, presumably the Army Board for the Correction of Military Records ("Army Board"), Def.'s Reply at 9 n.9, violated the Privacy Act when it "disclosed injurious information that they knew or should have known was unsubstantiated." Pl.'s Opp'n at 5. The plaintiff further alleges that the Army Board failed to remove the negative comment from her file once it realized that the comment was unsubstantiated and that the defendant had released the information in the DA Form 5374 in bad faith. Id. at 6. These allegations have no bearing on the plaintiff's Privacy Act claim because the Army Board is not a party to this case, and she does not seek relief with respect to actions taken by that entity in her complaint. In any event, the defendant is correct that the Army Board "determined that the performance evaluation containing the adverse statement was not in [the plaintiff's] personnel file so there was no basis to change her records." Def.'s Reply at 9 n.9 (citing Compl., Ex. 23 (July 30, 2009 Army Board for Correction of Military Records, Record of Proceedings) at 4, 8).

12

party's forfeiture of the right to assert it . . . does not destroy a court's ability to consider the issue sua sponte."), which the Court will do.

Here, the plaintiff alleges that the transmission of her DA Form 5374 to Sterling Medical, Malcolm Grow, and Dartmouth constituted a violation of 10 U.S.C. § 1102. See Compl. ¶¶ 24-26; see also Pl.'s Opp'n at 5-6. As noted above, this is the same issue of law that was raised, litigated, and decided in Budik II. See 949 F. Supp. 2d at 26-28 (discussing the application of § 1102 to the disclosure the DA Form 5374 and finding that the disclosure was permissible).

Again, a plaintiff is precluded from asserting a cause of action where the same issue was previously "contested by the parties and submitted for judicial determination in the prior case, the issue [was] actually and necessarily determined by a court of competent jurisdiction in that prior case," and applying the doctrine will not result in unfairness to the party bound by the previous ruling. See Martin, 488 F.3d at 454 (D.C. Cir. 2007) (citation omitted). As is the case with the plaintiff's Privacy Act claim, she had the opportunity in Budik II to litigate the issue of disclosure under § 1102, and thus no basic unfairness results from applying the doctrine of res judicata in this case. In fact, this is exactly a situation where the doctrine should be invoked. See Taylor, 553 U.S. 880, 892 ("By 'preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate,'" the doctrine of res judicata "protect[s] against 'the expense and vexation attending multiple lawsuits, conserv[es] judicial resources, and foste[rs] reliance on judicial action by minimizing the possibility of inconsistent decisions.'" (citation omitted)). Accordingly, the Court finds that the plaintiff's 10 U.S.C. § 1102 claim is barred by the issue preclusion component of res judicata and therefore the claim is dismissed.[5]

---

[5] To the extent that the plaintiff attempts to argue that the defendant acted in bad faith in releasing the form, see Pl.'s Opp'n at 5, the Court notes that § 1102 is a procedural statute that provides no remedy for a bad faith disclosure.
(continued . . .)

**E.      The Plaintiff's Request for Correction of Her Military Record**

In her opposition to the defendant's motion to dismiss, the plaintiff, for the first time in this case, asks the Court to "disturb[] the unfair, arbitrary and capricious ruling by the Army Board [for Correction of Military Records ("Army Board")] . . . to not strike the unsubstantiated comments or to not remove the entire document from [her] record." Pl.'s Opp'n at 4; see also id. at 7 ("[T]he Court should disturb the decision of the [Army Board] . . . not to strike or entirely remove the [DA Form 5374]" from her record). The defendant correctly notes in response, Def.'s Reply at 12, that the plaintiff failed to request that the Court review any Army Board decisions in either her complaint or her amended complaint.

It is a well-established principle of law in this Circuit that a plaintiff may not amend her complaint by making new allegations in her opposition brief. See Larson v. Northrop Corp., 21 F.3d 1164, 1173-74 (D.C. Cir. 1994) (affirming district court's grant of summary judgment in favor of defendant where plaintiff "failed to plead" a new cause of action, "raised the issue for the first time in his opposition to . . . [the defendant's] motion," and had not adequately pleaded the new cause of action in his complaint). Furthermore, the Court cannot envision how it could order the Army Board to amend the plaintiff's military record to remove the statements at issue given the Board's "determin[ation] that the performance evaluation containing the adverse statement was not in [the plaintiff's] personnel file so there was no basis to change her records." Compl., Ex. 23 (July 30, 2009 Army Board for Correction of Military Records, Record of Proceedings) at 4, 8. Finally, the plaintiff's claim, even if submitted as a proper amendment of her complaint, would be barred by the doctrine of res judicata. See Budik II, 949 F. Supp. 2d at

---

(. . . continued)
Rather, the statute provides a remedy for willful disclosure only when a disclosure is made "other than as provided" in the statute. See 10 U.S.C. § 1102(k).

30-33 (dismissing the plaintiff's claim for correction of her military record), aff'd, 2013 WL 6222903, at *1 ("Appellant has not shown that the refusal of the Army Board for the Correction of Military Records to remove an unfavorable comment was arbitrary, capricious, contrary to law, or unsupported by substantial evidence."). The Court therefore denies the plaintiff's requests to "disturb the decision" of the Army Board.

## IV.  CONCLUSION

For the foregoing reasons, the Court will grant the defendant's Motion to Substitute the United States and Dismiss.[6]

**SO ORDERED** this 14th day of April, 2014.

REGGIE B. WALTON<br>
United States District Judge

---

[6] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.